# United States District Court
# Northern District of Indiana

| | | |
|---|---|---|
| HERON, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:06-CV-842 JVB |
| | ) | |
| | ) | |
| CSX TRANSPORTATION, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Defendant has filed a motion in limine to exclude the expert testimony of Dr. Kraig Olenjniczak, Dr. Michael Morse, Dr. Kenneth Wiencek, and Mr. Robert Bond (DE 26). The motion has been fully briefed and is ripe for decision.

**A. Background**

On February 1, 2005, Plaintiff was driving a semi tractor hauling a flat bed trailer loaded with a wooden modular home as a CSX utility truck with a boom approached his truck from the opposite direction with its boom raised. The CSX truck pulled down three utility poles carrying wires which included power lines owned by NIPSCO. Plaintiff contends that he sustained injuries as the result of an electric shock he received when a live power line touched his rig. He was able to drive his truck home after the incident, but went to the emergency room the following day complaining of a severe headache, tingling, and trembling, particularly in his right arm. He did not mention burns during the emergency room visit, but claims that within a few

days after the incident he discovered burns to his right index finger and the back of his left leg. He has been diagnosed with migraine headaches, carpel tunnel syndrome and epicondylitis (tennis elbow).

**B. Discussion**

**(1)** *Legal Standard*

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the principles set out in *Daubert v. F Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589–92 (1993). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and (3) the witness has applied the principles and methods reliably to the facts of the case.

A district court has a gatekeeping function to ensure that expert testimony, whether scientific, technical, or based on other specialized knowledge, is both reliable and relevant. *Kumho Tire Co. Ltd., v. Carmichael*, 526 U.S. 137, 141 (1999). The district court must determine that an expert, whether relying on professional studies or personal experience, will "employ in the courtroom the same intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. Although the district court must determine that the expert's testimony is supported by "sufficient facts or data," this is a quantitative rather than a qualitative analysis. Fed. R. Evid. 702 advisory committee's note. "[T]he soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are

factual matters to be determined by the trier of fact . . . ." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

**(2)** *Dr. Oljeniczak*

Defendant first attacks what it assumes will be the testimony of Kraig J. Olejniczak, Ph.D., an electrical engineer,[1] that Mr. Heron experienced an electrical shock, as "nothing more than conclusions he has drawn from the statements of others." (Def.'s Mem. 5.) Plaintiffs counter that they do not intend to have Dr. Olejniczak testify that Mr. Heron was shocked, but rather that "the sequence of events and symptoms of electrical conductivity into [his] tractor and body are consistent with the known special characteristics of electricity." (Pls.' Br. 12–13.) Plaintiffs identify four events in connection with the incident on which Dr. Olejniczak relies: a blue light flash at the time of contact; computer, tractor, and battery electrical damage; entrance and exit burn wounds; and conductivity between the tractor trailer and an electrical line and between the foot pedal and chair in the tractor unit. Defendant replies that testimony that these events are consistent with the characteristics of electricity should be excluded because it lacks a reliable foundation, would not assist the jury, and is not a proper subject of expert testimony because any conclusions to be drawn from these fact are within the knowledge of the average juror.

Defendant makes the unsupported claim that the average juror would know that contact between a high voltage cable and a metal surface could produce a blue flash. The Court is not persuaded that this is so. Defendant further claims that observation of a blue flash is irrelevant

---

[1]Defendant does not challenge Dr. Olejniczak's qualifications. (Def.'s Reply Br. 1.)

because it does not establish that there was contact between Mr. Heron's vehicle and an electric line. This conclusion is incorrect. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed R. Evid. 401. If the appearance of a blue flash is consistent with electrical cable coming in contact with a metal surface, testimony that a blue flash was observed at the time of the accident has a tendency to support the conclusion that electric cables came in contact with Mr. Heron's rig.

Defendant also quarrels with Dr. Olejniczak's use of claimed electrical damage to Mr. Heron's truck to support his conclusion. Before Dr. Olejniczak can rely on electrical damage to the vehicle there must be either competent evidence that the vehicle sustained such damage or otherwise inadmissible evidence which is of a type customarily relied on by experts such as Dr. Olejniczak. *See* Fed. R. Evid. 703. At this stage the Court is unable to conclude that such evidence will not be produced at trial. Moreover, the Court is not persuaded the average jury knows that electrical damage to the vehicle's computer, instrument panel and battery is consistent with an exposure to electrical current, as Defendant argues.

Defendant asserts that Plaintiffs have no foundation to show that Mr. Heron sustained any electrical burns which were caused by this incident, asserting that some other expert would have to establish that Mr. Heron suffered electrical burns. Plaintiffs argue that Dr. Olejniczak's testimony will be based in part on the testimony of Mr. Heron. On the record before the Court, it cannot conclude that there will not be competent evidence tending to establish that Mr. Heron sustained burns of a type consistent with an electrical shock.

Finally, Defendant asserts that the field testing supervised by Dr. Olejniczak is

4

inadequate to establish that there was conductivity between the tractor trailer and an electrical line and between the foot pedal and chair in Mr. Heron's tractor. The testing was apparently not conducted on the rig involved in the accident and, at the time of the test, Dr. Olejniczak had only the assurances of Mr. Heron's attorney that the rig used in the test was comparable to Mr. Heron's. However, Mr. Heron's affidavit, attached to Plaintiffs' response brief as Exhibit N, establishes that the rig he drove the day of the incident was a 1996 Volvo, whereas the rig used for the test was a 1994 Volvo. The 1996 Volvo was not used because it had been totaled and salvaged and was not available for inspection. Mr. Heron recites the similarities and differences between the two rigs. The Court is unable to conclude at this stage that the differences between the two rigs render the test unreliable.

The Court cannot determine the accuracy of Defendant's unsupported claim that in order to form a reliable conclusion about the likely path of electricity in this case, Dr. Olejniczak must have knowledge of the precise point of contact between the power line and the rig, the conductivity of the materials, the amount of voltage applied, and the amount of resistance. These are matters for cross examination and rebuttal testimony. Accordingly, at this preliminary stage, the Court denies Defendant's motion to exclude Dr. Olejniczak's testimony.

*(3) Dr. Morse*

Defendant also seeks to exclude the opinion testimony of Michael D. Morse, Ph.D., a biomedical and electrical engineering specialist with knowledge and experience regarding the effects of electrical shock on human contact, that most, if not all, of Mr. Heron's post contact symptoms are consistent with an electrical shock. Defendant claims that Dr. Morse's opinion is

5

based solely on a temporal relationship between the alleged symptoms and the claimed electrical shock. This assertion is not supported by the facts. Dr. Morse testified at his deposition that the burns, headaches, and back spasms Mr. Heron reported and the diagnosis of carpel tunnel syndrome (but not the high blood pressure, heart valve damage, and optic nerve damage) are known consequences of electrical contact injuries. He observed that Mr. Heron had been generally healthy before the incident, and will testify that there are no other likely explanations for his complex of symptoms. Thus his conclusion is supported by more than a temporal relationship between the symptoms and the shock.

Defendant also quarrels with Dr. Morse's reliance on Mr. Heron's statements concerning his burns and when the damage to the electrical components of his truck occurred. However, as long as there is some competent evidence at trial regarding these matters, Dr. Morse is permitted to rely on them to support his conclusions. It is premature at this stage to conclude that there will be no such evidence at trial. Defendant presents no support for its implied argument that Mr. Heron would not be competent to testify to these matters. Accordingly, Defendant's motion to exclude Dr. Morse's testimony is denied at this time.

**(4)** *Dr. Wiencek*

Plaintiffs intend to offer the testimony of Kenneth C. Wiencek, M.D., that an electric shock caused Mr. Heron's lateral epicondylitis, and that a bump on the elbow during the incident caused him to develop an olecranon spur. Dr. Wiencek is an orthopedic surgeon who treated Mr. Heron for these conditions. Defendant argues that his opinion amounts to nothing more than conclusions drawn from the statements of others. However, Defendant admits that the opinion is

6

based on the symptoms reported by Mr. Heron as well as Dr. Wiencek's knowledge that those symptoms can be caused by electric shock. Defendant's motion to exclude Dr. Wiencek's testimony is denied.

**(5)** *Robert L. Bond*

Mr. Bond is Plaintiffs' vocational and economic expert. Mr. Bond testified at his deposition that Mr. Heron had an "average annual earning potential" of $54,917 before the incident. On the basis of that figure, Mr. Bond concluded that Mr. Heron sustained economic losses of between $444,818 and $1,578,861 as a result of the February 1, 2005, incident. However, as Mr. Bond admitted, his Rule 26(a)(2) report provided no insight as to how he arrived at the figure of $54,917, nor could explain the figure at his deposition or find anything in his file to reflect how he arrived at the $54,917 figure. Defendant further challenges Mr. Bond's opinions that Mr. Heron can no longer perform his past relevant work as a tractor-trailer driver or machinist. According to Defendant, the *Dictionary of Occupational Titles* classifies both occupations as "medium" in terms of the exertion required. However, solely upon the basis of Mr. Heron's description, Mr. Bond decided that his specific past employment should be classified as "very heavy."

With respect to the figure of $54,917, Plaintiffs argue in their response that Mr. Bond arrived at it by multiplying $4,576, Mr. Bond's conclusion as to Mr. Heron's average monthly potential earings, by 12. They apparently concede, however, that neither the report nor Mr. Bond at his deposition explained how he arrived at the figure.

Federal Rule of Civ. Pro. 26(a)(2)(B)(i) and (ii) require that the written report of an

7

expert witness contain a complete statement of all opinions the witness will express and the basis and reasons for them as well as the data or other information considered by the witness in forming them. Under Rule 37(c), if a party fails to provide information or identify a witness as required by Rule 26(a), the party is not allowed to use that information or witness at trial unless the failure was substantially justified or was harmless. This is a self-executing sanction, which does not require a motion. Fed. R. Civ. P. 37(c) advisory committee's note. Mr. Bond's report should have included an explanation of how he arrived at the monthly potential earnings amount of $4,576. It does not. Accordingly, any testimony based on this figure is excluded.

Regarding Defendant's objection to Mr. Bond's classification of Mr. Herron's past relevant employment, Plaintiffs respond that Mr. Bond used his expertise as well as Mr. Heron's statements to reach the opinion "that the specific factors from Mr. Heron's past employment deserve a classification of exertion higher than the standard defined terms." (Pls.' Resp. at 20.) It appears to the Court that Mr. Bond is merely saying that on the basis of Mr. Heron's description of the physical demands of the particular truck driving and machinist jobs he has held, he would classify those particular jobs as very heavy. Defendant has provided the Court with no authority to suggest that experts such as Mr. Bond do not typically rely on the statements of others in such cases. Consequently, the Court denies Defendant's motion to exclude Mr. Bond's opinion regarding the exertion classification of the truck driving and machinist jobs as actually performed by Mr. Heron.

## C. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's

motion to exclude expert testimony (DE 26). Specifically, the motion is denied as to Kraig J. Olejniczak, Michael S. Morse, and Kenneth C. Wiencek. The motion is granted as to Robert L. Bond's testimony to the extent he bases it on an average annual earning potential figure for Mr. Heron, and denied with respect to testimony on the exertion classification of the truck driving and machinist jobs as actually performed by Mr. Heron.

SO ORDERED on February 2, 2009.

s/ Joseph S. Van Bokkelen
Joseph S. Van Bokkelen
United States District Judge
Hammond Division